HAMITER, Justice.
 

 The Beverly Hills Annex Subdivision, Third Filing, in the City of Shreveport, is bounded on the south by Olive Street, on the west by Alexander Avenue, and on the north, adjacent to lots 37 to 43, inclusive, by a wide, deep, and long established ditch known as the East Side Drainage Ditch. Plaintiff, A. L. Alexander, owns numerous lots in the subdivision, among which are those numbered from 37 to 50, inclusive.
 

 
 *483
 
 In this suit against the City of Shreveport, to quote from his petition, plaintiff complains:
 

 “That at the intersection of Olive Street and Alexander Avenue in the City of Shreveport, the City of Shreveport has erected a concrete storm sewer, the opening of which measures 3 feet by 4 feet; this storm sewer terminates on Olive Street just east of the intersection of Alexander Avenue, and from the terminating point of the said concrete storm sewer,
 
 the City of Shreveport has caused to be dug, a narrow open ditch extending across Lots 37, 38, 39, 40, 41, 45, 46, 47, 48, 49, and 50 above described.”
 
 (Italics ours) (This alleged ditch is different from the large East Side Drainage Ditch above mentioned) (Brackets ours)
 

 “Although this open ditch was originally narrow and shallow, as a result of the concentrated flow caused 'by the erection of the storm sewer above described, it has fast and irregularly widened and deepened, and will eventually destroy entirely, the value of the lots above described, and deteriorate the value of the remaining property of your petitioner in that vicinity.
 

 “Petitioner shows that the City of Shreveport has also paved the streets in the vicinity of your petitioner’s above property, and so graded them as to concentrate and cause to flow over your petitioner’s property above described, as well as through the ditch above referred to, all of the water which arises or gets its source in that area bounded as follows:
 

 “South by Boulevard Street,
 

 “North by Topeka Street,
 

 “West by Gilbert Street,
 

 “East by Alexander Avenue.
 

 “Without the grading and drainage of the section as above set forth, your petitioner’s property would not be required to receive the waters now finding their source in the section so paved and drained.”
 

 The prayer is for judgment “enjoining the defendant from permitting the waters to flow through the storm sewer described in the foregoing petition, and across the' ditch hereinabove described, and enjoining the defendant from using the open ditch extending from the storm sewer to the drainage ditch, and further enjoining the defendant from diverting the waters in the streets which it has paved and drained to concentrate and flow on the property of your petitioner, as set forth in the foregoing petition.” Additionally, plaintiff prays for damages in the sum of $1,000, the estimated cost of filling the open ditch that crosses his property.
 

 Defendant first pleaded the prescriptions of one, three, five and ten years. Then it answered, denying responsibility for the construction of the open ditch and for the damaging of plaintiff’s property.
 

 - Following a trial of the case, the court rendered judgment rejecting the demands of plaintiff at his costs. He is prosecuting this appeal.
 

 The pleas of prescription will he treated as having been abandoned. They are not urged here.
 

 
 *485
 
 It is not disputed, in fact the evidence clearly shows, that the natural drainage 'for a large tract • of land in the City of Shreveport, constituting a watershed of about 40 acres and lying west and southwest of Beverly Hills Annex Subdivision, Third Filing, is in a northeasterly direction toward and across plaintiff’s property and to the large East Side Drainage Ditch that runs along its northern edge.
 

 In 1925, certain private individuals, who owned some land southwest of that subdivision and above it on the watershed, constructed an underground culvert or storm sewer, 700 feet long and 3 feet square, along the natural drainage and across their property. The culvert, at its east end, terminated on the west side of Alexander Avenue, a few feet south of Olive.
 

 During the following year, of in 1926, the city extended that culvert, continuing it along the natural drain, a distance of 100 feet. It ran diagonally across Alexander and across the south half of Olive, stopping at the center of the latter street (the north half of Olive was not then dedicated). This extension was necessary in order that Alexander Avenue and Olive Street, which were unpaved, could be used.
 

 For a long period of time thereafter, possibly eleven or twelve years, the water from the 40-acre watershed flowed through the entire culvert, coursed easterly along the south side of Olive Street approximately 150 feet, then crossed plaintiff’s lots, following a wide but shallow drain that ran northeasterly, to the large East Side Drainage Ditch. No erosion of the property’s soil or other damage was occasioned during that period, notwithstanding that the culvert, by reason of its relatively small diameter and its fall of 11 feet over a distance of 800 feet, had caused the water’s flow to be more concentrated and faster than previously.
 

 It was not until after the digging of the “narrow open ditch” or trench, described in plaintiff’s petition, that any destruction of the property was experienced. The brief of plaintiff’s counsel states: “Before the ditch was dug the land did not wash nor did water stand, while at present the land is being eaten up by the ditch.” To-the same effect is the testimony of plaintiff himself.
 

 This narrow open trench, lying several hundred feet west of the shallow natural drain, commenced at the end of the storm sewer in the center of Olive Street and ran almost in a straight line in a northeasterly direction toward and to the large East Side Drainage Ditch. As to when it was dug is not definitely known by plaintiff; he believes that the occurrence took place in “the last three or four years”. Mrs. Eula Derbonne, a witness for plaintiff, pastured her cattle on the land in 1934, at which time it was not there. She again visited the property in 1940 and then observed the man-made trench with its eroding sides.
 

 There can be no question that, as a result of the opening of the trench, considerable damage has been occasioned to plaintiff’s property. Without it the water would, and previously did, flow over and off a wide area with no injurious effect to the soil.
 
 *487
 
 But through this narrow, straight, confining passageway, after emerging from the culvert, the water has traveled -and now travels with great velocity, destroying much of the property’s soil, especially that near the East Drainage Ditch.
 

 The contention of plaintiff is, and he so alleges, that the city caused the trench’s digging; and it is primarily on this theory, as we appreciate the record and the argument of his counsel, that he is seeking judgment against the named municipality. But the note of evidence filed here, which we have carefully and closely studied, fails to support that theory. No witness has testified that the digging was done by, on behalf of, or under the direction of, the city; neither has it been shown that defendant would or did benefit in any manner by the ditch’s creation.
 

 When asked if he knew that the city cut the ditch, Mr. Alexander stated: “I don’t know who cut it. I wouldn’t say they cut it. I don’t know”. And to the query, “You have as much reason to believe Mr. Bauman cut it as the City of Shreveport, have you not?”, he answered “Yes”. Mr. Bauman, it appears, owns property very near to that of plaintiff. Further, in an obviously facetious manner, plaintiff said that in so far as he knew Judge Stephens, the trial judge, “might have dug that ditch”.
 

 Also on this point is some testimony of Mr. H. E. Barnes, Shreveport’s City Engineer since 1918. He testified that if the city had opened the ditch, which it did not do, the work would have been performed under his supervision. He learned of its existence through a letter written by plaintiff to the city’s mayor.
 

 Since the evidence fails to show that the city cut the trench, plaintiff now contends that defendant should be held responsible for the existing conditions under the doctrine of res ipsa loquitur. Even if that rule of evidence, which is peculiar to the law of a limited class of negligence cases, is appropriate to controversies of the kind before us, it can have no application here. One of the prerequisites for applying the rule is that the instrumentality causing the damage be under the management or control of the alleged offender (A. & J., Inc., v. Southern Cities Distributing Co., 173 La. 1051, 139 So. 477); the city, in this case, did not have the management and control' of plaintiff’s property or of the ditch that traversed it.
 

 The record does show, as pointed out by plaintiff, that certain employees of the Shreveport Health Unit occasionally poured oil in the ditch, as well as cut brush from and near it to permit the oiling. These acts, however, were mere health measures, performed in the interest of mosquito control; they in no manner evidenced a maintaining or a controlling of the ditch by the city.
 

 With respect to the charge made in the petition that there has been a diversion of water over plaintiff’s property, his counsel cite and rely on several decisions of this court, particularly Chandler v. City of Shreveport, 169 La. 52, 124 So. 143, which announce the general principle
 
 *489
 
 of law that a municipality cannot divert surface water in appreciable quantities from its natural drainage and cause it to flow through artificial channels over property which would not otherwise be so burdened. In the Chandler case we said:
 

 “ * * * In other words, the proprietor of an upper estate may make such works as tend to accelerate and hasten the drainage of his own lands beyond the natural slow process. But he can do nothing which would tend to throw upon the lower estate the burden of receiving waters which would not otherwise drain upon it. * * *»
 

 The evidence does not conclusively show that there has been created an artificial watershed with the consequent diversion of water to plaintiff’s property. Mr. George E. Dutton, a civil engineer offered by plaintiff, did express the opinion that some water was so diverted in two small areas; but his belief was predicated upon findings made with the natural eye and not after the taking of levels. Opposed to that opinion is the emphatic testimony of the city’s engineer, based on surveyed elevations that he obtained. He said: “There has not been any diversion of any additional area to drain into that. There has been a slight change in the drainage area, however, to the opposite effect.”
 

 ' Since plaintiff has failed to prove that the city has diverted water onto his property, or that it is responsible for the creation of the situation (narrow open ditch and resulting erosion) about which complaint is made, the relief for which he prays cannot be granted.
 

 The judgment is affirmed.